May it please the Court, my name is David Chesnoff of the firm of Chesnoff & Schoenfeld and I have the privilege of representing Mr. Klein before this honorable Court. I provide you with an opportunity to remedy what happened in the District Court in the Central District of California as a result of what happened in the District of Nevada. I'd first like to indicate that this case is clearly distinguishable from Sampson. Mr. Justice Thomas was writing about a circumstance where we were dealing with parole. The Court is aware there's no federal parole, so we're not concerned with parole. There was no federal parole at the time of this incident. In the Sampson case, there was a California statute that required waiver of privileges under the Fourth Amendment and every parolee in California was required to agree to a search clause. It wasn't intended by Judge Ray that Mr. Klein be subject to a search clause and he was on an illegal probationary sentence at the time. I would respectfully submit to your honors that there is no way that any enforcement of any conditions of the sentence he had that he was under when the search occurred in Nevada was a void sentence. Let's look at it this way. They could visit him, certainly, at his home, could they not? Yes, your honor. And did they get probable or a reasonable suspicion that he might have dangerous weapons? They came into the house, your honor. They saw what was described as a mirandizum and then they proceeded to enter areas in his home that were outside of the grab area as defined by Chimmel. So my position most respectfully would be that at that juncture they had violated his rights because of the fact that we believe, one, the sentence under which they were searching was void, and secondly, even assuming arguendo, that somehow it was a legal sentence, they had coerced him into agreeing to the condition for a search. Well, let's kind of break it up because the coercion where I think he wrote on that form under duress or something, so that's kind of one issue. We'll put that over here. I want to just follow up on Judge Fletcher's questioning. I agree with you that Samson would be distinguished because we're looking there at, I think that was parolees, and this is a probationer. But you can, do you agree that under nights you can search vis-a-vis a probationer if there's reasonable suspicion? I think you can search those areas that would present danger to the officers or with reasonable suspicion was not engendered by the viewing or in plain view of what they call ceremonial, which others might describe as decorative. There was no indication that there was contraband per se or real dangerous weapons, meaning firearms, within the dominion or control of the area in which Mr. Kline was in. But once they have reasonable suspicion, doesn't that enable them to search more than just the area immediately around the defendant? I don't think they can go into closed containers, which is what they did. They went into a drawer,  but that could be within, okay, I want to make sure we're talking about two things. If we have a search incident to an arrest, for purposes of officer safety, we can sort of check things within the immediate area, sort of the grab area, I think was the phrase that you used. Okay. Was the drawer within the grab area? No, Your Honor. How far away was it? It was outside of the reach of the defendant. Well, how far was outside of the reach? I would be misspeaking if I told you, Your Honor. But I think it's in the record. And I think it's clear that they didn't, weren't concerned about their safety because they hadn't handcuffed him. I would like to say one thing to you, Your Honor. All of these arguments about what probation officers could have done, if you accept my initial argument, which is that he shouldn't have been on probation, there shouldn't be any probation officers in his house. And I would agree with you, Judge Fletcher, if you were on probation, they could come to your house. But if you're not supposed to be on probation and it's void as a matter of law, then the actions of those officers in being there are illegal. And everything that follows after that is a result of the initial illegality, which, going back to what I just heard, is all a consequence of Mr. Kline never having any representation at critical stages. And I'm the one who read the judgments and told Mr. Kline that he should not be on  So, you have an illegal sentence. Counsel ---- That's why ---- I'm sorry, Your Honor. When he has not challenged his sentence properly because he didn't bring a habeas, can we in this proceeding adjudicate whether his sentence is legal or not? Yes, Your Honor. It says, I think the Court can take notice as a matter of law that what occurred in the central district was illegal. The initial sentence was illegal. The correction of it was illegal. The lack of counsel was illegal. All of those actions were illegal actions. And I think it's important that a court like the Ninth Circuit step in and say, if courts within our jurisdiction, central district and District of Nevada, are subjecting an individual like Mr. Kline to severe consequences as a result of that illegality and there are. He's doing 70 months in prison as a result of the search that occurred on the illegal probation that he was on. Well, I guess I understand your position. On the question of reasonable suspicion, there was the sword and there was also testimony that he became very disturbed and very nervous. Is that correct? I don't think it says it's an emphatic description. They said that he appeared worried. But most respectfully, Your Honor, if I had two probation officers going through my possessions and haven't had a problem in over a year and all of a sudden they're in my house, that can create anxiety that doesn't rise to the level of creating a cause for law enforcement officers to violate the Fourth Amendment, Your Honor. Counsel, had the probation officers conducted searches previously? They had gone to his place of business. They had searched his vehicle and found nothing in his vehicle. Had they searched his homes before? No. They had not. My position is this, Your Honors. The Ninth Circuit has to say, when a sentence is illegal it's illegal, and the consequences that flow from that are that there can be no consequences adverse to a citizen. What's your best authority for how we would do it in a proceeding at this stage? Well, I think you can use the remedy of remanding to the district court with direction that he was not on probation and Well, but that would be us making a determination that as a matter of law he's not on probation. So my question is, that seems like a collateral attack on his sentence, and I'm trying to understand in the context of this proceeding what would be the legal hook that would permit us to consider your argument. I think when a sentence is void, it's void as a matter of law, and that's the finding that you can make in the context of the appeal that we did. So then what would we do? Then we'd suppress the evidence? Is that what would happen? Yes. So it would have to be in the context of a suppression. That's the way. That's the only vehicle by which I saw that I could bring this. I did tell Mr. Klein what problems I saw, and I think that's what got him to seek out counsel to do the quorum nobis, but I was stuck with my case and did it the best way that I saw fit, and to be quite honest, Your Honor, it's ironic that this procedural question is stopping Mr. Klein from getting relief when it's a technical violation and a jurisdictional violation that he's not getting the benefit of. He's getting the burden of procedure without the jurisdiction. But you know, it's ironic that Mr. Klein didn't have a search clause in the original judgment because he was there in the circumstances, especially in light of the fact that Judge Ray never wanted a search clause, and in fact he never had one. I didn't know that Judge Ray didn't want a search clause. Because he didn't impose one. It's in the original judgment. It's absent. It's specifically absent and when this guy, this probation officer, Mr. Ellis, says to Mr. Klein, everybody in California to Nevada. No, but you can't coerce him to agree to a search clause without counsel, Your Honor. Well, if the probation officer said, this is the way we do things in Nevada and we simply won't agree to take you here, then doesn't your client have the choice of either remaining in Nevada or going back to California? Most respectfully, Your Honor, last time I checked, the judges in Nevada made that decision, not Mr. Ellis. That's why Mr. Klein should have had a hearing in front of a judge with Mr. Klein's case, he was going to impose a search clause. Mr. Ellis was making a pronouncement that, most respectfully, I would argue vehemently against if they tried to do it to one of my clients with my knowledge. I'd go in front of an Article III judge and I'd say, Judge Ray didn't want this, and why should he have it? He's a successful businessman. He's been here. He's working. And I'd make the argument. I might lose, and at that point in time, Judge Pro or Judge George or Judge Jones might say, Mr. Klein, you can't stay here. Then Mr. Klein would have to make a knowing choice. Thank you, Your Honor. We'll hear from the government. Good morning. May it please the Court. My name is Patrick Walsh and I represent the United States. There are three ways this Court can affirm the decision below denying the motion to suppress. First, they can agree with the District Court that they lacked jurisdiction to review the sentence of probation and that there was a valid search condition and the search occurred pursuant to that search condition. The second way is that this Court could find that the defendant was on probation, that the probation had a lawful home visit, even if it did or did not have a search condition, and that the search finding both the magazine and the guns were done as a valid search incident to arrest. And the third is, even if there was some sort of error, that the exclusionary rule in the United States v. Leon should apply and the evidence in this case should not be suppressed because both the probation officers and the ATF agent that sought the search warrant acted under good faith belief and a reasonable reliance on the fact that there was a valid order of probation. The District Court judge made a finding that there was reasonable suspicion. Is that correct? Yes, Your Honor. Yes, Your Honor. He found that based on the fact that Mr. Chesnoff has regularly referred to this sword as a ceremonial sword. That's not what the probation officers refer to. This sword was four and a half to five feet long. I believe that the picture that was submitted in the evidence showed it was a two-handed sword and was propped up next to the defendant's bed. It wasn't in some display case. The officers described it as a dangerous weapon. And when they saw it, they immediately said to the defendant, that is a dangerous weapon. And as a condition of his probation, he was not allowed to have it. Do you – I'm trying to figure out what the difference is between you saying that this is a weapon and the defense saying that this is a ceremonial sword. I've seen swords that get sold in stores in Spain and get sold to collectors and things like that, the Lord of the Rings swords and so on. Some of those don't have sharpened blades, although they're very heavy and do have a tip that certainly would be dangerous. Do you have any clue as to whether this had a sharpened blade or not? There's no evidence in the record. There's a photograph of it that shows that it clearly looks like a real sword and that the officers believe it was a dangerous weapon. What further supports that it was a dangerous weapon is they turn to Mr. Klein and ask him, do you have any other dangerous weapons? And there, Mr. Klein does this refusal to answer stalling in combination with these furtive looks around the room as if, I wonder if the weapons that I have here are visible, you know. And the officers then reached out into areas that were within his grasp. How far away was the drawer? Between three to five feet was the testimony of the probation officers. One said three to four, the other said five, both drawers. They also testified there was nothing obstructing Klein from reaching those drawers. There was no other furniture in the way, the officers weren't in the way, so it was well within his grasp area. And the first drawer open revealed what they thought could be construed as drug paraphernalia. The other drawer contained a high-capacity magazine. This is a large magazine, there's a photograph of it in the record with .223 caliber ammunition in it. You know, when you see the magazine, you wonder where's the gun that it goes to. He was, it was our contention that the officers had probable cause to arrest him before they opened the drawers and that search was roughly contemporaneous with the arrest they in fact conducted. The, but also that there was a valid search condition here. Now, although Mr. Klein testified that he signed this thing saying under duress, I don't believe the magistrate judge relied on that. The facts that she put forth supported the testimony of Probation Officer Ellis who, when you look at the entire circumstances, even Klein admitted that Officer Ellis was pleasant to him otherwise, that when he came to his business, that he didn't announce to his employees that he was on probation, they did it in a very quiet, respectful way. Officer Ellis testified that he had a couple problems with Mr. Klein, but that he was able to resolve those with Mr. Klein without going to the court. So I think that Mr. Klein's testimony is dubious at best when he says that there was some sort of force or coercion. I'm not very happy with Probation Officers adding conditions without saying we better go and talk to the judge. Well, Your Honor, I believe Is that policy of your Probation Officers? I believe case law says that defendants can waive their 32.1 rights. And the waiver in writing informed Mr. Klein that he had a right to have a hearing. Well, they can waive it. That's true. But the waiver needs to be voluntary, correct? That's correct. So in this case, he's got this form and he writes on there, the first form he writes under duress. That was his testimony, not the officer's testimony. Well, I think we'd have to accept that. We have to credit that. He writes it under duress. And then they have another form, which, you know, they tear up that one, go with this one. He basically is under some imprimatur of the people from California that are after him. You know, he's helped the government out. In his view, he's got a death threat in California. He wants to move to Nevada. Is this really the scenario of a voluntary waiver? Why isn't it a lot like the Colosso case? I don't – well, first, I don't believe the Court has to accept his testimony. I don't believe the magistrate judge found those facts to be credible. In fact, what the magistrate judge said is she found the parts of Klein's testimony that paralleled Officer Ellis' testimony to be credible. Because Officer Ellis testified in no uncertain terms that there was nothing unusual about this encounter. And if something like that or a fruso would have happened, he would remember this. And I believe that the magistrate judge found that credible and that the process – Ellis didn't recall any of the specifics of the meeting at which he requested Klein to sign the waiver. But he specifically testified under – on the stand that had something unusual happened, he would have remembered it. Well, I guess he doesn't consider it so unusual to impose a new condition, correct? No. But if someone would have objected to the imposition of the condition, that would have been very unusual. He also testified that the process for him, if someone objects, is really not that big a deal. He has to fill out a couple paragraphs and submit it to the judge to determine. So it's really no big deal to him if it has to go to a hearing or not. They requested – and I don't think it's improper either for the Nevada judges and the Nevada probation officers to want such a condition. The Supreme Court has said that such conditions are a benefit both to the probation office in enforcing conditions and also to the probationer in helping the probationer reintegrate into society. And for the district courts in Nevada or the probation officers to feel that this will help this defendant in this – in that jurisdiction. But this never happened. This is all fine to talk about. I'm sorry? This is all very fine to talk about, but they didn't go before the judge. There was no hearing. No. There was no hearing. But the waiver, then, of course, goes before the judge. So – and, again, in that waiver, when you're determining whether the waiver was which tells Mr. Klein he has the right to a hearing, he has a right to the assistance of an attorney, and he has to – and so – and that Klein wrote that he knowingly waived that right. And I think if you look at the testimony, it's clear that this claim by Klein that he signed under duress is not credible. So Klein also testified that he – or, again, for the first time, never mentioned before, that they asked him to do a different waiver, a waiver allowing him to be drug tested. And he refused because he didn't feel drug testing was necessary. And he – there's no explanation why he felt comfortable with that one and yet not comfortable with the – but felt coerced to sign the other one. It's also that he had four separate probation officers, not just Officer Ellis, and he never once complained to any of them about the search condition, or he had his home – I'm sorry. If we were to find that this condition was invalid, can you still support the search that was done? Yes, Your Honor, because the probation conditions imposed by Judge Wray allowed for home visits to be conducted and allowed for – said it was a violation if there was dangerous weapons. And so when the officers went into the home, they didn't do a search. They just – they came in saying, I've never been to your home before, although other officers had done home visits and not searches of the home, but home visits. They said, show us around. So he showed them around and showed them into the master bedroom. That's where they saw the weapon in plain view. And again, the conditions of probation allow seizure of any contraband observed in plain view. These are the conditions imposed by Judge Wray. So therefore, once they saw that, they had probable cause that he violated the conditions of his probation. That came even further when he refused to answer the questions about other weapons and made these furtive looks around. They had probable cause to arrest him. Then the firearms, both the firearms and the magazine with the ammunitions, were found as a lawful search incident to arrest. Thank you. Thank you. You're out of time, but we'll give you a minute rebuttal. I think it's very important to focus on the fact that at the time of these issues about whether he could waive his search, the search clause issue, Rule 32.1 was in effect. That requires a hearing. It requires the probation officer to advise the individual that he's entitled to counsel. None of those things occurred in this case. They're not waivable. U.S. They're not waivable? They're not waivable in the circumstances where they're coerced, Your Honor. Well, okay, that's quite different from saying they're not waivable. Well, actually, Your Honor, at the time, I believe it was mandatory that he be advised that he have counsel. I don't believe that's ever waivable at the time. That's what the U.S. v. Garcia-Torres case taught us. This was under an old version of the rule? Yes. Yes. Yes, Your Honor. The question about the drug testing, in Nevada, they don't take you off probation necessarily if you refuse drug testing. That's something that's subject to contentious hearings before the district court on a regular basis, especially when it's not a condition that had previously been imposed. Most respectfully, Your Honors, they go to that house with the illegal probation in effect. The question you asked, Judge Fletcher, can they justify this search? They saw the ceremonial sword. They then went into areas they had no rights to search incident to arrest because there was no ---- They don't go beyond, do they go beyond the drawer? No, but the drawer is what triggers calling 8- Right. At that point, they stop. I mean, they didn't start rummaging through closets or anything else. They went to the drawer that we have testimony, according to the government, and I don't know whether you dispute this, that was 3 to 5 feet away. Now, is that outside of the grab area? The original drawer search? Is the drawer that's 3 to 5 feet away out of the grab area? Yes, Your Honor. Yes. And then after that, they go to get a warrant that's tainted by all of this, and good faith doesn't apply that Judge Fletcher will remember this. The grab area includes what area, then, Counsel? In my opinion? Yes. Something you can grab. Okay, so it's only as far as your fingertips extend? Not- So it would not extend, for example, to that table? Not in the totality of the circumstances where you have two officers standing between the individual and the area to be searched, Your Honor. And that's what we have here. Thank you. Thank you very much, Your Honor. The case of United States v. Kline is submitted.
judges: B. Fletcher, McKeown, Bybee